1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 LA TWON WEAVER, | Case No.:  18cv2888 BTM (LL) |
| 12                Petitioner, | **ORDER:** |

11   LA TWON WEAVER,

                      Petitioner,

12

13   v.

14   RONALD DAVIS, Warden of California
State Prison at San Quentin,

15
                      Respondent.

16
17
18
19
20

Case No.:  18cv2888 BTM (LL)

**ORDER:**

**(1) ACCEPTING STIPULATION OF THE PARTIES [ECF NO. 53] AND ISSUING FINDINGS ON EXHAUSTION STATUS OF CLAIMS IN FEDERAL PETITION;**

**(2) GRANTING RENEWED MOTION FOR STAY AND TO HOLD FEDERAL HABEAS PROCEEDINGS IN ABEYANCE [ECF NO. 54]; AND**

**(3) SETTING DEADLINES**

21      Pending before the Court is Petitioner's renewed motion to hold federal habeas

22 proceedings in abeyance while the state exhaustion petitions are pending.  (ECF No. 54.)

23 Respondent has filed an opposition, and Petitioner has filed a reply.  (ECF Nos. 55, 59.)

24 The parties were previously directed to meet, confer and attempt to reach agreement as to

25 the exhaustion status of the claims in the federal Amended Petition ["Petition"], and on

26 February 26, 2020 filed a joint statement indicating they "were able to agree upon and

27 stipulate to the exhaustion of all claims and sub-claims in the Petition, except [for] four

28 [claims]."  (ECF No. 53 at 2.)

For the reasons discussed in the instant Order, the Court **ACCEPTS** the stipulation of the parties as to the exhaustion status of the claims in the federal Petition, **ISSUES FINDINGS** in accordance with that stipulation, **GRANTS** Petitioner's renewed motion to hold the federal proceedings in abeyance, and **SETS** deadlines as outlined below.

## I.     RELEVANT PROCEDURAL HISTORY

Petitioner was convicted in a San Diego Superior Court bench trial of robbery, burglary, and first degree murder, with the special circumstances of murder in the course of a robbery and murder in the course of a burglary, and was sentenced to death.

Petitioner filed an opening brief on direct appeal on January 17, 2007 and a reply brief on December 14, 2010.  (ECF No. 28, Lodgment Nos. 72, 74.)  In a direct appeal opinion dated April 16, 2012, the California Supreme Court affirmed Petitioner's convictions of first degree murder (California Penal Code § 187(a)) with the special circumstances of murder in the course of a robbery and in the course of a burglary (Cal. Penal Code § 190.2(a)(17)), robbery (Cal. Penal Code § 211), burglary (Cal. Penal Code § 459), affirmed the findings that Petitioner used a firearm in the commission of the offenses (Cal. Penal Code § 12022.5(a)) and inflicted great bodily injury in the commission of the robbery and burglary (Cal. Penal Code § 12022.7(a)), and affirmed Petitioner's death sentence.  <u>People v. Weaver</u>, 53 Cal. 4th 1056 (2012).  The United States Supreme Court denied the petition for a writ of certiorari on January 7, 2013.  <u>Weaver v. California</u>, 568 U.S. 1095 (2013).

Petitioner filed a habeas petition with accompanying exhibits in the California Supreme Court on May 31, 2011, filed a reply to the Respondent's informal response to the petition with accompanying exhibits on June 4, 2013, and filed a motion for a stay pending completion of investigation of selective prosecution claims on December 29, 2017. (ECF No. 29, Lodgment Nos. 79-96, 98-100.)  On November 14, 2018, the California Supreme Court denied the state petition for writ of habeas corpus and denied the motion for stay pending completion of investigation.  (ECF No. 29, Lodgment No. 102.)  On November 27, 2018, Petitioner filed a motion for reconsideration of denial of stay and

summary denial of habeas corpus petition claims 12, 13 and 14 without allowing the presentation of relevant supporting evidence, and on December 24, 2018, filed an application to supplement his petition.[1]  (ECF No. 29, Lodgment Nos. 103, 104.)  On January 2, 2019, the California Supreme Court denied the motion and application.  (ECF No. 29, Lodgment No. 105.)

On December 27, 2018, Petitioner filed a request for appointment of counsel in this Court and on February 5, 2019, the Court granted that request and appointed counsel pursuant to the recommendation of the Selection Board.  (ECF Nos. 1, 5.)  On July 1, 2019, the Court denied without prejudice Petitioner's motion for equitable tolling of the deadline for filing the federal petition.  (ECF No. 30.)  On November 4, 2019, the Court issued an order deferring ruling on Petitioner's renewed motion for equitable tolling pending the filing of a protective petition on or before November 14, 2019.  (ECF No. 40.)  On November 5, 2019, Petitioner filed a Petition for Writ of Habeas Corpus.  (ECF No. 41.)

On November 6, 2019, Petitioner filed a Notice of Filing Petitions for Writ of Habeas Corpus in the California Supreme Court and Lodgment of Petitions, indicating that Petitioner filed second and third state habeas petitions in the California Supreme Court on May 20, 2019 and November 5, 2019, respectively.[2]  (ECF No. 43.)

On December 3, 2019, the Court granted Petitioner's renewed motion for equitable tolling, denied without prejudice Petitioner's motion to hold the federal proceedings in

---

[1] Claims 12-14 in the first state habeas petition are raised in the federal Petition as Claims 1-3.  (See ECF Nos. 54-1 at 12, 16; see also ECF No. 29, Lodgment No. 79.)

[2] Petitioner indicates that "[t]he second state petition raises new evidence in support of otherwise-exhausted claims 1, 2 and 3 of the federal petition," that "[t]he third state petition raises all of petitioner's fully unexhausted claims, along with a claim of cumulative error," and that both petitions have been since transferred to the San Diego County Superior Court where they both remain pending.  (ECF No. 54-1 at 8-9.)  Petitioner also indicates that Respondent requested, and the superior court granted, a stay of the second state petition pending the outcome of the California Supreme Court's decision in In re Friend, Case No. 256914, but Respondent has not requested a stay of the third state petition.  (Id.)

abeyance, and set deadlines for the filing of a joint statement on exhaustion and potential briefing on any requests for stay and abeyance after the filing of an amended petition on or before February 5, 2020.  (ECF No. 51.)  On January 27, 2020, Petitioner filed an Amended Petition.  (ECF No. 52.)

On February 26, 2020, pursuant to the Court's December 3, 2019 Order, the parties filed a Joint Statement Regarding Exhaustion.  (ECF No. 53.)   On March 14, 2020, Petitioner filed a renewed motion to hold federal habeas proceedings in abeyance while the state exhaustion petitions are pending.  (ECF No. 54.)   On March 30, 2020, Respondent filed an opposition to the renewed motion.  (ECF No. 55.)   On April 20, 2020, Petitioner filed a reply.  (ECF No. 59.)

## II.   DISCUSSION

### A.   Exhaustion

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus."  Picard v. Connor, 404 U.S. 270, 275 (1971); see also 28 U.S.C. §§ 2254(b) and 2254(c).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  Picard, 404 U.S. at 275.

In the joint statement, the parties agreed that fifty-eight claims in the Petition are exhausted, including "Claims 4 through 6; Claims 8 through 43; Claims 46 through 59; Claim 61; Claim 63; and Claims 66 through 68," and that nine claims in the Petition are unexhausted, including "Claim 7; Claim 44; Claim 45; Claim 60; Claim 62; Claim 65; Claim 69; Claim 70; and Claim 71 (to the extent it relies on unexhausted claims)."  (ECF No. 53 at 2.)  The joint statement also indicated that: "The parties do not agree as to Claims 1, 2, 3, and 64.  Respondent believes they are exhausted.  Mr. Weaver agrees that the claims are exhausted, but because those claims include facts and/or law that are not exhausted, the new facts and/or law must first be fairly presented to the state court."  (Id.)

Petitioner contends that "the new law and/or facts pled in these claims must first be exhausted in state court absent an agreement that the following new law and/or facts are

exhausted," listing new exhibits, facts and/or law pled with respect to Claim 1-3 and Claim 64. (ECF No. 53 at 3-4.) Respondent maintains that "the law provides that the presentation of additional facts in a federal petition does not render a claim unexhausted when the petitioner has presented the substance of his claim to a state court and the supplemental evidence does not fundamentally alter the legal claim considered by the state court," that "[t]his is the situation with Claims 1, 2, 3, and 64," and that "[b]ecause those claims are exhausted, this Court's consideration of them is limited to the evidence presented to the California Supreme Court in Weaver's first state habeas petition." (ECF No. 53 at 4, citing Vasquez v. Hillery, 474 U.S. 254, 257-58 (1986), 28 U.S.C. § 2254(d)(2) and Cullen v. Pinholster, 563 U.S. 170, 181-82 (2011).)

An en banc Ninth Circuit Court decision held that: "A claim has not been fairly presented in state court if new factual allegations either 'fundamentally alter the legal claim already considered by the state courts,' or 'place the claim in a significantly different and stronger evidentiary posture than it was when the state courts considered it.'" Dickens v. Ryan, 740 F.3d 1302, 1318 (9th Cir. 2014) (en banc), quoting and citing Hillery, 474 U.S. at 260, Beaty v. Stewart, 303 F.3d 975, 989-90 (9th Cir. 2002), Aiken v. Spaulding, 841 F.2d 881, 883 (9th Cir. 1988), and Nevius v. Sumner, 852 F.2d 463, 470 (9th Cir. 1988). Yet here, the parties have indicated they agree even the "contested" claims are exhausted. (See ECF No. 53 at 2.) In particular, neither Petitioner nor Respondent asserts in the joint statement that any new law and/or facts now pled by Petitioner have rendered Claims 1-3 or 64 themselves unexhausted.[3] Given the lack of any stated disagreement on the

---

[3] The Court notes that in the renewed motion for stay and abeyance, Petitioner indicates that he "has asserted unexhausted claims that are potentially meritorious," and appears to mistakenly include Claims 1-3 and 64 in that list. (ECF No. 54-1 at 19.) Earlier in the motion, Petitioner also appears to mistakenly include Claim 64 in a list of claims "as to which state court remedies had not been exhausted." (Id. at 9.) Yet, in the filed reply brief, Petitioner refers to Claims 1-3 and 64 as exhausted claims for which Petitioner contends there is new evidence available, consistent with the parties' joint statement on exhaustion. (See ECF No. 59 at 6, 17-18.) In the reply, Petitioner also takes issue with Respondent's

exhaustion status of those claims, or any of the claims in the federal Petition, the Court will refrain from detailed examination of the exhaustion matter.

As outlined above and based upon the agreement of the parties, the Court **ACCEPTS** the stipulation and **FINDS** that "Claim 7; Claim 44; Claim 45; Claim 60; Claim 62; Claim 65; Claim 69; Claim 70; and Claim 71 (to the extent it relies on unexhausted claims)," are unexhausted and that "Claims 4 through 6; Claims 8 through 43; Claims 46 through 59; Claim 61; Claim 63; and Claims 66 through 68," as well as Claims 1-3 and 64, are exhausted.  (ECF No. 53 at 2.)

**B.   Stay and Abeyance Under Rhines**

In Rose v. Lundy, 455 U.S. 509 (1982), the Supreme Court held that "federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims" and "reasoned that the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims."  Rhines v. Weber, 544 U.S. 269, 273 (2005), citing Lundy, 455 U.S. at 518-19. Yet, as the Rhines Court recognized, "[t]he enactment of AEDPA [The Antiterrorism and Effective Death Penalty Act] in 1996 dramatically altered the landscape for federal habeas corpus petitions" and "[a]s a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims."  Id. at 274-75.

Under Rhines, when presented with a mixed federal habeas petition, "a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to

_____

apparent characterization of the exhaustion status of the claims as an "allegation," and asserts that "[t]he exhaustion status of the claims is not an allegation but an agreed-upon fact to which both parties stipulated."  (Id. at 17 n.3.)  In view of the parties' stipulation as to the exhaustion status of the claims in the federal Petition and Petitioner's affirmance of that stipulation as fact in the reply brief, the Court accepts the stipulation notwithstanding the inclusion of Claims 1-3 and 64 in the list of unexhausted claims in the motion.

exhaust his previously unexhausted claims." Id. at 275-77.  The Supreme Court also counseled that "stay and abeyance should be available only in limited circumstances" and was only appropriate where: (1) "there was good cause for the petitioner's failure to exhaust his claims first in state court," (2) the "unexhausted claims are potentially meritorious" and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 277-78.

Because, as noted above, the parties have each indicated their agreement as to the exhaustion status of the claims in the federal Petition, including that fifty-eight claims and/or subclaims are exhausted and nine claims are unexhausted (see ECF No. 53 at 2), the Court finds that the federal Petition is clearly a mixed petition.  Accordingly, a Rhines analysis appears appropriate under the circumstances presented in this case.

### 1.   **Good cause**

The Supreme Court has cautioned: "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Rhines, 544 U.S. at 277.  However, "[t]he caselaw concerning what constitutes 'good cause' under Rhines has not been developed in great detail."  Dixon v. Baker, 847 F.3d 714, 720 (9th Cir. 2017), citing Blake v. Baker, 745 F.3d 977, 980 (9th Cir. 2014) ("There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust.")    The Ninth Circuit has indicated that the showing required for "good cause" is less than "extraordinary circumstances." See Jackson v. Roe, 425 F.3d 654, 661-62 (9th Cir. 2005) ("Although examination into Jackson's failure to exhaust was proper, and indeed, necessary, under Rhines, we hold that the application of an 'extraordinary circumstances' standard does not comport with the 'good cause' standard prescribed by Rhines.")

The Ninth Circuit has also provided that "good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure." Blake, 745 F.3d at 982, citing Pace, 544 U.S. at 416.  "While a bald assertion cannot amount

to a showing of good cause, a reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust, will." Blake, 745 F.3d at 982; contrast with Wooten v. Kirkland, 540 F.3d 1019, 1024 (9th Cir. 2008) (rejecting good cause showing where a petitioner indicated he was "under the impression" that counsel had presented all claims presented in the state appellate court to the state supreme court, reasoning that "[t]o accept that a petitioner's 'impression' that a claim had been included in an appellate brief constitutes 'good cause' would render stay-and-obey [sic] orders routine.")

Petitioner advances numerous arguments in support of his assertion that he has good cause for the previous failure to exhaust claims or the additional facts and/or law now presented in support of several already exhausted claims. For one, Petitioner notes that "[t]hrough the course of the federal habeas investigation, petitioner discovered and presented additional evidence that *was not* presented in state court in support of claims that *were* presented in state court" and "pleaded additional unexhausted claims that were not previously raised in state court." (ECF No. 54-1 at 11) (emphasis in original.) Petitioner contends that "[a]dditional information and evidence that supports constitutional challenges to California's death penalty generally, and as applied to petitioner, which was not available until recently, is included in many of the claims brought in the second and third state petitions," and cites to Claims 1-3, 7, 44-45, 60, 64-65, and 71. (Id. at 12-14.) Petitioner also contends that several claims in the most-recently filed third state petition rely on changes in science and/or the law that have occurred since the first state habeas petition was filed, namely Claims 7, 44, 45 and 70, and that he was unable to raise Claim 62, which alleges dysfunction in the state review process generally and as applied to Petitioner, until his first state habeas petition had been denied. (Id. at 14.) Finally, Petitioner argues that "California's unspecific and sometimes incoherent timeliness rules create a 'reasonable confusion' regarding whether subsequent state petitions will be deemed untimely," and also provide good cause for a stay. (Id. at 15.)

///

///

18cv2888 BTM (LL)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### a.   New Evidence and Changes in Law

Petitioner asserts that he has good cause for failing to exhaust because several of his previously-raised claims now rely on new evidence not previously available when the first state petition was filed and because several unexhausted claims rely on new evidence and/or changes in the law since the filing of the first state petition.  With respect to Claims 1-3, Petitioner contends that "[e]ach claim relies on the fruits of an investigation into the District Attorney's charging practices that did not conclude until December 2018" and that Claim 7, 44, and 45 "each rely on newly-available advances in brain science and scientific research regarding physical brain maturity and its psychological consequences." (ECF No. 54-1 at 12-13.)  Petitioner notes that Claim 60 relies on "Governor Gavin Newsom's November 9, 2019 Executive Order placing a moratorium on executions in California," "commentary on the executive order by a justice of the California Supreme Court," "the ongoing aftermath of California's 2016 ballot initiative to accelerate death penalty review in the state," and "the ever-increasing record of delays and disparities in the processing of state capital post-conviction review." (Id. at 13.)  Petitioner argues Claim 64 is "based on new facts indicating that national support for and application of the death penalty has plummeted in recent years," Claim 65 "relies on the August 6, 2019 acknowledgment by California Supreme Court justice Goodwin Liu that the state Court's standards for evaluating clemency recommendations are inadequate and suspect," and Claim 71 "raises cumulative prejudice and therefore relies on all of the new facts relied on in the underlying claims." (Id. at 13-14.)  Petitioner also contends that "Claims 7, 44, and 45 rely on newly-available advances in brain science and scientific research regarding physical brain maturity and its psychological consequences" as well as "recent developments in the law in response to this growing body of scientific research," and Claim 70 "relies on the September 30, 2018 passage of California Senate Bill 1437." (ECF No. 54-1 at 14.)

First, with respect to Claims 1-3 alleging selective prosecution, Respondent maintains that the "December 2018 completion of an investigation into the district attorney's charging practices does not constitute good cause," pointing out that "[t]he same

counsel has continuously represented Weaver for over twenty years but made no effort to obtain discovery relating to selective prosecution until eleven years after he was appointed," noting that counsel was appointed in 1999, began informal discovery in 2007, but did not request information concerning such a potential claim until 2010.  (ECF No. 55 at 10.)  Respondent also notes that even prior to completion of this investigation, Petitioner presented claims relating to that investigation in his first state petition and fails to show the new evidence substantially alters the claims.  (Id. at 11.)  Respondent asserts that the allegation in the state petition and instant federal Petition are "similar" and that "[t]he results of Weaver's investigation that are discussed in his Petition do nothing more than provide additional data showing a correlation between a defendant's race and the district attorney's decision to seek the death penalty during the relevant time period."  (Id.)

In so arguing, Petitioner relies heavily on the Ninth Circuit's decision in Gonzalez v. Wong, 667 F.3d 965, 980 (9th Cir. 2011), to contend that "a stay *is* available to present new evidence in state court regarding exhausted claims so long as the petitioner has good cause for not presenting the evidence in the original state petition."  (ECF No. 59 at 13) (emphasis in original.)  In Gonzalez, the Ninth Circuit held that it was unable to view previously-undisclosed records obtained during the pendency of the federal habeas proceedings, given that the Supreme Court had recently held in Pinholster that section 2254(d)(1) review under AEPDA was limited to the record before the state court, and in Gonzalez, the state court had not been provided with an opportunity to review the records in question.  See Gonzalez, 667 F.3d at 979.  Reasoning that "[f]or us simply to ignore the materials that did not emerge until the federal habeas proceedings would be to reward the prosecutor for withholding them," and recognizing the potential merit of the claim, the Gonzalez Court "conclude[d] that the appropriate course for us at this point is to remand to the district court with instructions that it stay and abey the habeas proceedings to allow [Petitioner] to present to state court his *Brady* claim including the subsequently-disclosed materials."  Id. at 980.

///

However, Gonzalez is factually distinguishable from the instant case in a crucial respect.  Unlike in Gonzalez, where the new evidence was only uncovered during the federal proceedings and the state court was never provided an opportunity to consider that evidence, the California Supreme Court was clearly aware of the evidence and materials at issue in Petitioner's case.  A full year prior to the California Supreme Court's decision denying habeas relief, Petitioner requested a stay of the state habeas proceedings in order to complete the discovery, and painstakingly detailed both the investigation into the charging practices and the discovery proceedings conducted in his case to that point, as well as the efforts Petitioner's counsel made to keep the California Supreme Court apprised of the status and progress of those proceedings.

Petitioner asserts that "[t]he California Supreme Court waited almost 12 full months before it denied the Stay Motion," and while "[a]ware that petitioner was on the verge of completing the investigation, litigation, and expert analysis-and aware that Petitioner's preliminary analysis established that racial discrimination had infected the capital charging decisions in San Diego County-the California Supreme Court nevertheless denied the stay motion on November 14, 2018 without explanation or comment" and "summarily denied the first habeas petition on the same day."  (ECF No. 59 at 12.)  Yet, again, the instant situation is distinguishable from the one presented in Gonzalez.  In Petitioner's case, the state court was not only kept apprised throughout the progression of the discovery proceedings, but the information obtained from those proceedings was also known to the California Supreme Court, albeit in a "preliminary" fashion.  Indeed, in the motion for a stay of the state proceedings, Petitioner discussed the work completed to date and the expectation that the data obtained would provide "supplemental evidentiary support" for the state claims.  (ECF No. 59-1 at 11-12.)  The accompanying declaration of counsel similarly indicated that the data was not complete, but that "we have obtained sufficient data to provide to the experts for their preliminary analysis."   (ECF No. 59-1 at 78.)

Petitioner contends that "[u]nder the comity principle, the state court should be given a chance to consider this new evidence before the federal habeas proceeding proceeds."

(ECF No. 54-1 at 12.)  Unlike in <u>Gonzalez</u>, the new evidence at issue here was not unknown to the state court.  At least with respect to the evidence resulting from Petitioner's investigation into the San Diego County charging practices and decisions, it is apparent that the state court was already provided the opportunity to consider that evidence and declined after being provided with the "preliminary analysis."  Moreover, as Petitioner indicates (<u>see id.</u> at 6), the California Supreme Court granted Petitioner's application for leave to file a motion for reconsideration and Petitioner filed both a motion for reconsideration of denial of stay and summary denial of habeas corpus petition claims 12, 13 and 14 (Claims 1-3 in the federal Petition) without allowing the presentation of relevant supporting evidence and an application to supplement his petition; after those filings, the state court subsequently denied both the motion and application.  (See ECF No. 29, Lodgment Nos. 103-05.)  Given that the state court had more than one opportunity to hear the selective prosecution claims together with the results of the investigation and declined to do so, the Court is not persuaded <u>Gonzalez</u> provides grounds for a stay.

Although <u>Gonzalez</u> does not support Petitioner's position, the Court is not presently persuaded that a stay of the federal proceedings to first allow the state court to consider the completed results of the selective prosecution investigation supporting Claims 1-3 is foreclosed.  The Court recognizes that Petitioner and Respondent agree the Court cannot review new evidence under AEDPA unless it is first presented to the state court.  (See ECF No. 53 at 4) ("[B]ecause [Claims 1-3 and 64] are exhausted, this Court's consideration of them is limited to the evidence presented to the California Supreme Court in Weaver's first state habeas petition."), citing <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257-58 (1986), 28 U.S.C. § 2254(d)(2) and <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181-82 (2011); (<u>see also</u> ECF No. 54-1 at 9) ("Under <em>Cullen v. Pinholster</em>, 563 U.S. 170 (2011), this Court may not consider the new evidence in evaluating [Claims 1-3] under 28 U.S.C. §2254(d) unless the evidence is first presented to the state court," and "[a]ccordingly, petitioner filed the second state petition presenting the new evidence.")  Comity concerns appear to counsel in favor of a stay to first allow the state court to consider the unpresented evidence in support of these

claims, particularly given that the exhaustion petitions are currently pending in that court. Were Petitioner able to demonstrate the state court decision is not entitled to deference under section 2254(d)(2), consideration of Claims 1-3 would be de novo and the Court could consider the results of the selective prosecution investigation.  See Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004) ("[T]he state-court fact-finding process is undermined where the state court has before it, yet apparently ignores, evidence that supports petitioner's claim."), overruled on other grounds by Murray v. Schriro, 745 F.3d 984, 999-1000 (9th Cir. 2014), citing Miller-El v. Cockrell, 537 U.S. 322, 346 (2003); see also Milke v. Ryan, 711 F.3d 998, 1007 (9th Cir. 2013) ("Section 2254(d)(2) authorizes federal habeas relief when the state-court decision was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' Such unreasonable determinations 'come in several flavors,' one of them being 'where the fact-finding process itself is defective.'"), citing Taylor, 366 F.3d at 1000, 1001.  Alternately, were Petitioner first able to satisfy section 2254(d)(1) based only on the evidence presented to the state court, review would also then be de novo and Pinholster would not thereafter preclude the Court from considering the finalized results of the selective prosecution investigation in support of Claims 1-3.  Even in that situation, under a de novo review, the Court's consideration of Petitioner's claims could be further informed by any discussion or analysis offered by the state court in the adjudication of the exhaustion petitions.  See Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc) (holding that even under de novo review, reasoning of state court remains relevant to reviewing court's consideration of whether a constitutional violation occurred).  In any event, by permitting a stay, which is supported by not only comity considerations but also the Court's analysis of Petitioner's good cause argument for Claims 7, 44 and 45 discussed below, Pinholster would no longer present any obstacle to the Court's consideration of the new evidence.

With respect to Claims 7, 44 and 45, Petitioner contends that these claims "rely on newly-available advances in brain science and scientific research regarding physical brain maturity and its psychological consequences" as well as "recent developments in the law

in response to this growing body of scientific research." (ECF No. 54-1 at 14.) Claim 7 alleges Petitioner's jury waiver was constitutionally infirm and that alternatively, trial counsel was ineffective in advising Petitioner to waive the jury without investigation into his mental health and cognitive condition as they related to impairment of his ability to make such a waiver. (ECF No. 52 at 64-79.) Claim 44 alleges that Petitioner's death sentence is cruel and unusual because he was 23 at the time of the offense and his brain development was incomplete and his culpability thus reduced, and Claim 45, relying on the facts outlined in Claim 44, alleges that the imposition of a mandatory sentence of life in prison without the possibility of parole constitutes cruel and unusual punishment because Petitioner was 23 at the time of the offense. (Id. at 317-40.)

Respondent argues that any such changes do not provide good cause, noting that "Weaver cites scientific literature that existed before he filed his first state habeas petition in 2011" and maintains that "[a]lthough there may be additional support for his claims now, he provides no explanation for why he could not bring these claims in that first petition." (ECF No. 55 at 15.) Petitioner argues the relevant science "had not reached the mainstream" until after the filing of the first state petition and that "most of the studies petitioner cited in support of the claim that *Roper v. Simmons* should be extended to individuals such as petitioner were published after Dr. Pablo Stewart signed his declaration in support of the first state petition in May 2011." (ECF No. 59 at 15, citing ECF No. 52 at 317-29, ECF No. 52-1.) Petitioner contends that "[u]nderstanding of the science of brain development 'substantially' evolved during the first decade of the millennium" and "[w]hile the theory that 'emerging adulthood' continued until age 25 was the subject of scientific investigation, the body of research did not produce a scientific consensus until after the petition was filed." (Id.)

Several experts who provided declarations in connection with the first state habeas petition have also provided supplemental declarations in support of the federal Petition. The experts appear to each agree that a scientific consensus on the matter of brain development in younger adults has only been reached in recent years. The experts largely

and consistently indicate that "a significant portion of the literature pertaining to the brain development of individuals age 21 or older . . . is the product of research conducted subsequent to the signing of my declaration in 2011." (ECF No. 52-1 at 424 (supplemental declaration of Dr. Sontag)); (see also ECF No. 52-1 at 429 (declaration of Susan Audap) (same); ECF No. 52-1 at 434 (declaration of Dr. Stewart) (same).) Dr. Stewart, who submitted a declaration in support of the first state habeas petition, states that "this is an emerging field of research and many of the most seminal studies in the field, particularly with regard to brain development during the decade of the twenties, were published in the last decade." (ECF No. 52-1 at 435.) Dr. Stewart also states that "based on the materials I reviewed prior to signing my original declaration in 2001 [sic], and based on the state of the scientific and medical research as it existed at that time, I would have been able to testify at the time I signed that declaration that, to a reasonable degree of medical certainty, Mr. Weaver's cognitive deficits and mental disorders substantially impaired his ability to enter a knowing, intelligent, and voluntary waiver of his right to a jury," and that the recent research "further supports" his conclusion concerning the infirmities of the jury waiver. (Id.) Moreover, Dr. Sontag's 2011 declaration submitted in support of the first state petition, and attached in support of the federal Petition, asserts that: "La Twon at age 23 was not, functionally, an adult. His history precluded him from consolidating the developmental base required to meet adult challenges, and his current level of functioning was severely compromised." (ECF No. 52-1 at 266) (footnote omitted.)

While it appears clear that some research on this matter existed prior to the filing of the 2011 petition, given that the experts agree and indicate much of the research was conducted after 2011 and scientific consensus was not reached until recently (see ECF No. 52-1 at 424, 429, 434), and legal recognition followed even later (see ECF No. 59 at 16, 18-19), it is unclear how Petitioner could reasonably have brought such claims earlier. In view of the recent scientific research and consensus discussed in the expert declarations coupled with subsequent legal developments and changes in the law concerning Claims 7, 44 and 45, as well as the arguments addressed above with respect to Claims 1-3, the Court

is persuaded Petitioner has "set forth a reasonable excuse, supported by sufficient evidence, to justify th[e] failure" to exhaust.  Blake, 745 F.3d at 982, citing Pace, 544 U.S. at 416.

### b.   Remainder of good cause arguments

Because the Court has found good cause for Petitioner's failure to exhaust based on the scientific developments and changes in law discussed above, the Court need not address whether Petitioner's additional arguments, including but not limited to recent developments in the administration of the death penalty in California and allegations concerning the confusing nature of California's timeliness rules, could also satisfy the good cause requirement.

### 2.   Potential Merit of Unexhausted Claims

In Rhines, the Supreme Court specified "even if a petitioner had good cause for that failure [to exhaust], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Id., 544 U.S. at 277, citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")  Yet, the Supreme Court also advised "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 278.  With respect to this second Rhines prong, the Ninth Circuit has since instructed that:

> A federal habeas petitioner must establish that at least one of his unexhausted claims is not "plainly meritless" in order to obtain a stay under *Rhines*, 544 U.S. at 277, 125 S.Ct. 1528.  In determining whether a claim is "plainly meritless," principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless "it is perfectly clear that the petitioner has no hope of prevailing." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).  "A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." *Id.* (citing *Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)).

18cv2888 BTM (LL)

Dixon, 847 F.3d at 722.

While Respondent acknowledges the Ninth Circuit's holding in Dixon, he nonetheless first argues "the standard must be something higher than this," asserts "[s]uch a low threshold would permit a stay in virtually every capital case" and contends "[t]his does not comport with *Rhines*'s mandate that a stay and abeyance should be available only in limited circumstances." (ECF No. 55 at 19.) Respondent maintains Petitioner's unexhausted claims in any event also fail to satisfy the standard set forth in Dixon. (Id.)

The Court agrees Respondent appears to accurately note the less than onerous plainly meritless standard outlined by the Ninth Circuit in Dixon, but the Court disagrees with Respondent's assertion that such a standard "would permit a stay in virtually every capital case" or that the standard should not be applied in the instant case. This is primarily because a showing that a claim is not plainly meritless cannot, on its own, warrant a stay under Rhines. Instead, the Supreme Court has explicitly set out three separate prongs which a reviewing court must evaluate, and each of which must be satisfied, in deciding the propriety of stay and abeyance in any specific case. Also, the standard set forth by the Ninth Circuit remains a threshold that some claims, such as those previously foreclosed or rejected under clearly established federal law, would fail to meet. In any event, because this Court is obliged to adhere to Ninth Circuit case law, the Court must and will accordingly follow the direction that "the federal court refrain from ruling on the merits of the claim unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" Dixon, 847 F.3d at 722, quoting Cassett, 406 F.3d at 624.

Respondent also contends Petitioner "cannot show the unexhausted claims raised in the Petition are not plainly meritless given the requirements of California Penal Code section 1509," and states that "[n]one of Weaver's unexhausted claims nor any of the exhausted claims included in the Petition allege Weaver is actually innocent or is ineligible for a death sentence as required for relief under California Penal Code section 1509." (ECF No. 55 at 19.) Section 1509(d) provides in relevant part that "a successive petition whenever filed shall be dismissed unless the court finds, by the preponderance of all

available evidence, whether or not admissible at trial, that the defendant is actually innocent of the crime of which he or she was convicted or is ineligible for the sentence."  Cal. Penal Code § 1509(d).  Other courts in this District, as well as other district courts in California, have reasonably refrained from attempting to reach a conclusion as to how the California Supreme Court or other reviewing state courts might treat unexhausted claims in view of the recent state law changes, and the Court agrees with this approach.  (See e.g. ECF No. 59 at 17-18 in Prince v. Davis, S.D. Cal. Case No. 16-cv-0871-BAS-KSC) ("In accord with other district courts which have considered this matter, the Court declines an invitation to speculate how the state court may treat his unexhausted claims, given that the California Supreme Court, in upholding the statute at issue, "explicitly reserved 'as-applied' challenges to the statute by individual prisoners." Seumanu v. Davis, 2019 WL 1597518, at *2 (N.D. Cal. Apr. 15, 2019), citing Briggs v. Brown, 3 Cal. 5th 808, 827 (2017) ('We review here a facial challenge to the constitutionality of Proposition 66, and express no view on claims that may be presented by individual prisoners based on their own circumstances."); see also Stanley v. Ayers, 2018 WL 2463383, at *6 (N.D. Cal. June 1, 2018) ("[T]he Court cannot rule at this time that returning to state court would be futile based on § 1509(d).")")  Petitioner also indicates Respondent requested a stay of at least one of the state exhaustion petitions in San Diego Superior Court pending the California Supreme Court's decision in a separate case concerning the definition of "successive petition" in California Penal Code section 1509.  (See ECF No. 59 at 22, citing In re Jack Wayne Friend, California Supreme Court Case No. S256914.)  For these reasons, the Court will abstain from any supposition as to how the state court may decide this matter or apply that state statute to Petitioner's unexhausted claims.

Upon cursory initial review of Petitioner's unexhausted claims, it is clear that at least one of those claims is not plainly meritless, which again, is sufficient to satisfy this second Rhines prong.  See Dixon, 847 F.3d at 722 ("A federal habeas petitioner must establish that at least one of his unexhausted claims is not "plainly meritless" in order to obtain a stay under Rhines, 544 U.S. at 277, 125 S.Ct. 1528.")  Petitioner contends in Claim 7 that the

jury waiver was constitutionally infirm because he was not a fully-developed adult and alternatively that trial counsel was ineffective for advising Petitioner to enter a jury waiver without investigation as to whether Petitioner was impaired in his ability to enter a knowing, intelligent and voluntary waiver.  (ECF No. 52 at 64.)  Clearly established law requires a defendant's waiver of the right to a jury trial be knowing, voluntary and intelligent.  See Patton v. United States, 281 U.S. 276, 311-12 (1930), abrogated on other grounds by Williams v. Florida, 399 U.S. 78, 90 (1970); see also Florida v. Nixon, 543 U.S. 175, 187 (2004) ("A defendant, this Court affirmed, has 'the ultimate authority' to determine 'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'"), citing Jones v. Barnes, 463 U.S. 745, 751 (1983); Wainwright v. Sykes, 433 U.S. 72, 93, n. 1 (1977) (Burger, C. J., concurring).  Given the scientific developments and expert declarations discussed previously in the instant Order, as well as the recent legal developments on this subject, the Court cannot conclude at this time that "'it is perfectly clear that the petitioner has no hope of prevailing'" on his contention that he was impaired in his ability to enter a knowing, voluntary and intelligent jury waiver such that the claim is plainly meritless.  See Dixon, 847 F.3d at 722, quoting Cassett, 406 F.3d at 624.

Nor can the Court conclude at this time that the related allegations of ineffective assistance of trial counsel are plainly meritless.  With respect to the latter contention, the Court recognizes that under clearly established federal law, "a defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel."  Knowles v. Mirzayance, 556 U.S. 111, 122 (2009), citing Strickland v. Washington, 466 U.S. 668, 687 (1984).  While this is a challenging standard to meet, Petitioner indicates records reflect trial counsel retained and consulted with mental health experts to determine whether Petitioner was competent to stand trial, but at the same time trial counsel failed to consider or explore whether Petitioner was also potentially impaired in his ability to knowingly, voluntarily and intelligently waive his right to a jury trial.  (See ECF No. 52 at 64-80.)  The Court cannot at this time conclude "'it is perfectly clear that the petitioner has no hope of prevailing'" on his contention trial counsel

acted ineffectively in connection with the jury waiver.  <u>See</u> <u>Dixon</u>, 847 F.3d at 722, quoting <u>Cassett</u>, 406 F.3d at 624.   Accordingly, the Court finds Petitioner has satisfied the second <u>Rhines</u> prong because at least one of his unexhausted claims is not "plainly meritless."  <u>See</u> <u>Dixon</u>, 847 F.3d at 722, citing <u>Rhines</u>, 544 U.S. at 277.

### 3.   <u>Intentional Delay or Abusive Tactics</u>

With respect to the third <u>Rhines</u> prong, the Supreme Court stated that "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all," acknowledging "[i]n particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death."  <u>Id.</u>, 544 U.S. at 277-78.

On this matter, Respondent indicates only that "[t]he remaining *Rhines* requirement appears to have been satisfied."  (ECF No. 55 at 20.)  Upon consideration of the fact that Respondent does not specifically assert or argue that Petitioner has engaged in any intentional delay or abusive tactics and instead simply indicates this third prong appears satisfied, and in view of the fact Petitioner has already returned to state court to exhaust a second and third state habeas petition (see ECF No. 43), the Court finds Petitioner has satisfied the third <u>Rhines</u> prong.

## III.   <u>CONCLUSION AND ORDER</u>

For the reasons discussed above, the Court **ACCEPTS** the stipulation of the parties [ECF No. 53] and **FINDS** that Claims 7, 44-45, 60, 62, 65, 69-70, and 71 (to the extent Claim 71 relies on unexhausted claims) are unexhausted and that Claims 1-6, 8-43, 46-59, 61, 63-64, and 66-68 are exhausted.  The Court **GRANTS** Petitioner's renewed motion [ECF No. 54] to stay the federal proceedings and hold the mixed federal petition in abeyance pursuant to <u>Rhines</u>.

The <u>Rhines</u> Court also instructed that "district courts should place reasonable time limits on a petitioner's trip to state court and back."  <u>Id.</u> at 278.  Meanwhile, the local rules of this district provide that: "If the petition indicates that there are unexhausted claims from which the state court remedy is still available, petitioner may be granted a thirty (30) day

period in which to commence litigation on the unexhausted claims in state court." CivLR HC.3(g)(5); see also Rhines, 544 U.S. at 278 (indicating approval of a procedure that provided a petitioner 30 days to commence state court proceedings and 30 days to return to federal court after conclusion of the state court exhaustion proceedings), citing Zarvela v. Artuz, 254 F.3d 374, 381 (2nd Cir. 2001).

In view of the fact that Petitioner has already returned to state court to present his unexhausted claims to that court for exhaustion purposes and has provided proof of those filings to this Court (see ECF No. 43), Petitioner will, on or before December 23, 2020, file a brief report with this Court concerning the status of the state habeas petitions. Petitioner will also file a brief report with this Court every 90 days thereafter to keep the Court updated on the status of the state petitions. During the pendency of these state proceedings, proceedings on the federal case will be stayed. Any amended petition filed in this case must be filed within 30 days of the final state court resolution of the exhaustion petition. If Petitioner fails to file any amended petition in this Court within the deadline set forth in the instant order, the stay will be lifted.

**IT IS SO ORDERED.**

Dated: December 14, 2020

Honorable Barry Ted Moskowitz
United States District Judge

18cv2888 BTM (LL)